# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re<br><br>NINA N. NGUYEN,<br><br>    Debtor. | Case No. 09-13057-RGM<br>(Chapter 11) |
| AMERICAN EXPRESS CENTURION BANK,<br><br>    Plaintiff,<br><br>vs.<br><br>NINA N. NGUYEN,<br><br>    Defendant. | Adv. Proc. No. 09-1214 |

## MEMORANDUM OPINION

This case is before the court on the motion of American Express Centurion Bank for a default judgment declaring the debtor's obligation to it nondischargeable. American Express issued a credit card to the debtor. It asserts that the debtor incurred the outstanding charges without the intention of paying them and that two charges were for real estate taxes. 11 U.S.C. §§523(a)(2)(A) and 523(a)(14A). The debtor did not respond to the complaint.

## Standard for Default Judgment

The Court of Appeals for the Fourth Circuit set out the standard for granting a default judgment in *DIRECTV, Inc. v. Rawlins,* 523 F.3d 318, 322 n.2. It stated, quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir.2001), "The defendant, by his default,

1

admits the plaintiff's well-pleaded allegations of fact." Admitting well-pleaded allegations of fact does not admit conclusions of law or that the movant is entitled to the relief he seeks. The Court of Appeals explained:

> The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. . . . As the Supreme Court stated in the "venerable but still definitive case" of *Thomson v. Wooster*: a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." The defendant is not held . . . to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (quoting *Thomson v. Wooster,* 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed. 105 (1885)) (internal quotations and other citations omitted).

In *Ryan,* the Court of Appeals concluded, "The court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought". *Ryan v. Homecomings Fin. Network,* 253 F.3d at 780-781. It reviewed the record, accepted the well-pleaded facts and affirmed the district court's denial of the motion for entry of a default judgment because the well-pleaded facts did not support the relief requested. *See also In re Hetrick,* 379 B.R. 612 (Bankr.E.D.Va.2007); Fed.R.Bankr.P. 7008(a) which incorporates Fed.R.Civ.P. 8(a)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

### Loan to Pay Real Estate Taxes, 11 U.S.C. §523(a)(14A)

The American Express statement shows a charge for $9,184.96 on July 28, 2008, with the notation "FFX REAL ESTATE TAX" which means "Fairfax County Real Estate Tax." Most of the balance outstanding on the account on April 21, 2009, the day the petition was filed, arose from this

charge.  Section 523(a)(14A) provides that a loan incurred to pay a tax not dischargeable under §523(a)(1) is itself nondischargeable.  Section 523(a)(1)(A) incorporates §507(a)(8)(B) which includes property taxes "incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."  The last date for payment without penalty of the first half real estate taxes in Fairfax County in 2008 was Monday, July 28, 2008.[1]  The fair inference is that a tax payment made on the due date is for that tax period, not an earlier tax period. The court concludes that the charge was a loan to pay real estate taxes due on June 28, 2008, which was within one year prior to the filing of the petition in bankruptcy.  *See In re Cook,* 416 B.R. 284 (Bankr.W.D.Va.2009).  However, that is not enough.  Section 507(a)(8) is applicable only to unsecured claims.  Real estate taxes in Virginia are a lien on the real estate prior to all other encumbrances.  Va.Code (1950) §58.1-3340.  The payment of the first half 2008 real estate taxes by charging them on the American Express card was payment of a secured claim, not an unsecured claim, and is not within the scope of §523(a)(14A).

The second charge on the same day was a convenience fee charged to the debtor for the convenience of paying real estate taxes by credit card.  It was $229.62 which is 2.5 percent of the real estate tax paid to Fairfax County.  The notation on the American Express statement was "FFX REAL ESTATE CONV" which means "Fairfax County Real Estate Convenience Fee."  The fee is in addition to the real estate tax and is not itself a tax.  It is due only if a property owner elects to pay real estate taxes by credit card.  If the property owner pays by check or in cash, the fee is not

---

[1] The court takes judicial notice of the due date for real estate taxes in Fairfax County and the convenience fee for paying real estate taxes by credit card.  Both facts are generally known.  They are included on semi-annual tax bills and are available on the County's internet website.  *See* Fed.R.Evid. 201.

charged. The fee is paid to the third party processor not to Fairfax County. The convenience fee is not a tax and is not within the scope of §523(a)(14A).

### **Fraud, 11 U.S.C. §523(a)(2)(A)**

American Express asserts that the debtor incurred the outstanding charges without the intent to pay them. The complaint sets out the applicable charges and incorporates the relevant portions of the debtor's statements from July 19, 2008 through May 20, 2009, all of which were attached to the complaint. It also refers to the debtor's schedules and statement of financial affairs. In addition to these facts, the complaint asserts that the debtor "obtained the goods, services and tax payments . . . through representations which she either knew were false or which were made with such reckless disregard for the truth as to constitute willful misrepresentations"; that "at the time the [debtor] incurred the charges on the Account, her monthly expenses, including expenses required to service her secured and unsecured debt, exceeded her monthly income and therefore, she did not intend nor have the ability to honor her obligation"; that the charges "represent a sudden change in the [debtor's] spending/charging habits on the Account". The charges and payments on the account as reflected on the statements of account attached to the complaint are well-pleaded facts. However, the other assertions are conclusions drawn from those facts. The question is whether those conclusions should be drawn from those facts at this time.

The statements show that the balance on the account was $671.19 on July 19, 2008, and $11,433.25 on April 21, 2009, the date the petition was filed. The last charge was made on

November 22, 2008, for $137.41 for groceries. The last payment, a telephone payment, was made the same day but was declined that day by the debtor's bank.[2]

Payments were made on August 5, 2008, which substantially paid the charges due from the prior statement and on September 20, 2008, which paid the September 13, 2008 and October 13, 2008 payments. The former was late; the latter, early. A final payment was attempted on November 22, 2008. It would have paid the payment due November 13, 2008, of $558.13 and the payment due on December 14, 2008, of $321.00, but was "declined" by the debtor's bank the day she attempted to make it.

The charges are not dischargeable if they were incurred without the intention of re-paying them. The record does not support this conclusion. Once the real estate tax payment is removed from the account, the total amount of the remaining charges for the four-month period is not substantial. There were two recurrent charges each in August and September, 2008, for warranties of some sort. They did not recur after the September statement. The other new charges were

---

[2] The charges and payments, excluding interest, membership charges and credits, from July 19, 2008, to April 21, 2009, the date the petition was filed, were:

| Date | Description | Amount |
|---|---|---|
| 7/27/2008 | TJ Maxx | $12.60 |
| 7/07/2008 | La Madeline | $25.00 |
| 7/28/2008 | Fairfax County Real Estate Tax | $9,184.96 |
| 7/08/2008 | Fairfax County Real Estate Con. | $229.62 |
| 8/04/2008 | Warranty Finance | $130.00 |
| 8/04/2008 | Warranty Finance | $107.13 |
| 8/05/2008 | Payment | ($306.14) |
| 8/07/2008 | TJ Maxx | $52.47 |
| 8/12/2008 | Syms | $125.94 |
| 8/16/2008 | Burlington Coat | $49.92 |
| 8/19/2008 | Medical Facility Assoc. | $15.00 |
| 9/29/2008 | Payment | ($1,063.81) |
| 10/02/2008 | Warranty Finance | $130.00 |
| 10/02/2008 | Warranty Finance | $107.13 |
| 11/22/2008 | Giant Food | $137.41 |
| 11/22/2008 | Phone Payment | ($879.13) |
| 11/22/2008 | Phone Payment Declined by Bank | $879.13 |

relatively modest and were typical household charges for food, clothing, and medical assistance. The last charge was for $137.41 on November 22, 2008, the same day the debtor attempted to make her last payment on the American Express account. The clothing charges were made in August. But for the real estate tax payment on July 28, 2008, and attendant fees and interest, the account would have been paid at the time the debtor filed bankruptcy. The monthly charges were paid in full each month, although one month the payment was late.

The American Express account is actually two accounts. One is required to be paid in full each month. The other is called a Flexible Account. The amounts charged on the Flexible Account are payable over time. Only the real estate tax payment and convenience fee were charged on the Flexible Account.[3] The rest of the charges were on the regular account. Standing alone, the statements do not indicate the debtor's intent when she made the charges.

The debtor's schedules do not assist in resolving this question. The debtor stated on Schedule I that she was unemployed when she filed her petition. But, it is not known whether she was unemployed when she paid the real estate taxes, or what her other sources of income or her employment prospects were. The schedules state that her husband was employed and earned $6,262.00 a month. She listed three pieces of real estate, valued at $1.7 million, $255,000 and $200,000. All three were scheduled as worth less than the debts secured by them. She listed four cars, three Mercedes Benz and one Toyota Camry as well as numerous credit cards.

The schedules and statement of financial affairs do show that the debtor was in financial distress. But, they speak as of April 21, 2009, when they were filed. It is not possible to discern

---

[3]The August 18, 2008 statement shows a previous balance from the July 19, 2008 statement of $671.19; $286.14 to the regular account and $385.05 to the Flexible Account. The August 5, 2008 payment was applied to both accounts, $276.14 to the regular account and $30.00 to the Flexible Account.

from them her financial status as of July 28, 2008, when she made the tax payment. It is not clear when the debtor discovered that she was in financial distress, what actions she took and what she reasonably expected. It is not possible to infer what the debtor's state of mind was when she incurred the charges on the account, particularly the July 28, 2008 charge to pay the real estate taxes. The well-pleaded facts and the schedules and statement of financial affairs referred to by American Express do not permit the court to infer that the debtor did not intend to pay the charges when she incurred them.[4]

The motion for a default judgment will be denied.

Alexandria, Virginia
January 6, 2010

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Robert L. Deichmeister
Rocco DeLeonardis

Copy mailed to:

Nina N. Nguyen
926 Wolburn Court
McLean, Virginia 22102

15656

---

[4] American Express also asserts that the charges represent a sudden change of the debtor's spending or charging habits on this account. The account statements only go back to July 2008. The court does not know what the prior history was or whether there was a change from it.